UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CENTRAL KENTUCKY GRAIN, LLC | ) | Case No. 23-32460-crm |
| | ) | |
| Debtor. | ) | |
| | ) | |

**SUPERIOR AG RESOURCES COOPERATIVE, INC.'S OBJECTION
TO MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR A
PROTECTIVE ORDER FOR SUBPOENA TO PRODUCE DOCUMENTS,
INFORMATION, OR OBJECTIONS OR TO PERMIT INSPECTION OF
<u>PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)</u>**

Superior Ag Resources Cooperative, Inc. ("<u>Superior Ag</u>"), by and through its undersigned counsel, hereby objects (the "<u>Objection</u>") to the *Motion to Quash or, in the Alternative, for a Protective Order for Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding)* [Docket No. 13] (the "<u>Motion to Quash</u>") filed by Boone Farms Trucking, Lori Lea Boone, and Mark Anthony Boone (collectively, the "<u>Boone Parties</u>"). In support hereof, Superior Ag submits as follows:

**INTRODUCTION**

1.  The Court should deny the Motion to Quash because Superior Ag has good cause to issues the Subpoenas. The Boone Parties, their affiliates and family members played a myriad of roles with the Debtor, as a member, a manager, an employee, a vendor, a contract counterparty, and a guarantor of its secured debt. As such, understanding the assets of the Boone Parties, determining how the Boone Parties tax returns treated the value of the Debtor and its assets, identifying what offers the Boone Parties solicited for the Debtor's assets, and otherwise seeing the documents and information responsive to the Subpoenas are all important in this Bankruptcy Case.

23483513.v2

**BACKGROUND**

2.      Superior Ag is the holder of 51% of the membership interests in Central Kentucky Grain, LLC (the "Debtor"), and Mr. Boone is the holder of the remaining 49% of the membership interests in the Debtor. Mr. Boone and his wife Lori Boone were managers of the Debtor. Certain of the Boone Parties had contractual relationships with the Debtor.

3.      Prior to the Petition Date (defined below), the Debtor entered into a line of credit agreement with CoBank, N.A. ("CoBank") under the terms of which the Debtor borrowed money from CoBank, which was secured by a pledge of the Debtor's assets. As a result, as of the Petition Date, the Debtor owed CoBank approximately $4,382,390.73 (the "CoBank Claim"). Superior Ag guaranteed repayment of the CoBank Claim in full, and the Boone Parties guaranteed repayment of 49% of the amount of the CoBank Claim, which is the same percentage as Mr. Boone's membership interests in the Debtor.

4.      Prior to the Petition Date, the Debtor ceased operations and began workout negotiations among its members. Superior Ag sought information from the Boone Parties as part of these negotiations, including tax returns and financial statements. Even at this time, the Boone Parties' assets, what they reported in their taxes (especially as it relates to the Debtor), and their ability to satisfy the CoBank Claim were all critical pieces of information to any resolution of the Debtor's obligations. Among other things, any transfers of assets from the Debtor to the Boone Parties, any investment of capital by the Boone Parties into the Debtor, the Boone Parties' treatment of the Debtor for tax and reporting purposes, and the Boone Parties' ability to satisfy their partial guaranty of the CoBank Claim were critical to Superior Ag. Further, certain assets of the Debtor were commingled with assets of Superior Ag and/or the Boone Parties, and an accounting of what assets belong to what parties and where such assets were located was important. The Boone Parties did not want to provide certain categories of information to Superior Ag,

including balance sheets and tax returns. From Superior Ag's perspective this lack of disclosure made an out-of-court solution nearly impossible.

5. Michael McCain of the law firm Mattingly, Simms, Robinson & McCain, PLLC represented the Boone Parties in these workout negotiations.

6. On October 18, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court"), thereby commencing this chapter 7 case (the "Chapter 7 Case").

7. On October 19, 2023, William Stephen Reisz was appointed as chapter 7 trustee for the Debtor's bankruptcy estate (the "Trustee"). [Docket No. 3].

8. On December 1, 2023, Superior Ag closed on its purchase of the CoBank Claim. As a result of that transaction, Superior Ag has the right to collect on the CoBank Claim against the Debtor and to pursue the Boone Parties on their partial guarantee of the CoBank Claim.

9. On December 6, 2023, the Trustee conducted and concluded the meeting of creditors in the Chapter 7 Case held pursuant to section 341 of the Bankruptcy Code.

10. On December 14, 2023, Superior Ag filed its *Motion for Leave Under Rule 2004 of the Federal Rules of Bankruptcy Procedure to Examine and to Request the Production of Documents from Boone Farms Trucking, Lori Lea Boone, and Mark Anthony Boone* [Docket No. 10] (the "2004 Motion"). By the 2004 Motion, Superior Ag sought authority from the Court to serve the subpoenas on the Boone Parties (collectively, the "**Subpoenas**"), which sought information and documents related to acts, conduct, and any transfers between the Boone Parties and the Debtor, as well as the financial resources of the Boone Parties as guarantors of the CoBank Claim.

3

23483513.v2

11. On December 19, 2023, the Court entered an order granting the 2004 Motion [Docket No. 12] (the "2004 Order") without objection. By the 2004 Order, the Boone Parties were required to produce relevant documents within 21 days after the Subpoenas were served.

12. On December 20, 2023, Superior Ag's counsel emailed Mr. McCain, counsel for the Boone Parties, to determine whether he would accept service of the Subpoenas. On December 21, 2023, Mr. McCain accepted service of the Subpoenas, a copy of the email accepting service is attached as **Exhibit A**. Therefore, the production of documents were due to Superior Ag by January 11, 2024.

13. On January 10, 2024, the Boone Parties filed the Motion to Quash.

14. A hearing on the Motion to Quash is scheduled for February 20, 2024. [Docket No. 16].

## ARGUMENT

15. Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." FED R. BANKR. P. 2004(a); 11 U.S.C. § 101(15) (the term entity includes a person). The scope of an inquiry under Bankruptcy Rule 2004 is very broad. *In re Fearn*, 96 B.R. 135, 137 (Bankr. S.D. Ohio 1989). "The scope of a Rule 2004 examination is extremely broad and has often been likened to a lawful 'fishing expedition.'" *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000) (citations omitted).

16. "Rule 2004's scope 'has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the discovery of fraudulent conduct.' … To further the above stated purpose of discovering fraudulent conduct, '***[t]hird parties having knowledge of the debtor's affairs, as well as the debtor itself, are subject to examination***.'" *In re Lev*, No. 05-35847, 2008 WL 207523, at * 3 (Bankr. D.N.J. 2005) (internal citations omitted) (emphasis added).

17. The standard for determining the propriety of a discovery request under Bankruptcy Rule 2004 is "good cause." *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992). A determination of "good cause" is made by taking into consideration the totality of the circumstances, including the importance of the information to the examiner and the costs and burdens on the creditor. *Id.*; *see also In re Stubbs*, 565 B.R. 115, 128–29 (6th Cir. B.A.P. 2017).

18. Here, despite the Boone Parties' argument that Superior Ag merely "parroted" the language of Bankruptcy Rule 2004 in showing good cause for issuing the Subpoenas, Superior Ag set forth ample reason in the 2004 Motion for why good cause exists for requiring the Boone Parties to produce the specific documents listed in the Subpoenas. Superior Ag is the Debtor's largest equity holder and largest creditor, therefore it has a significant interest in the Debtor and the Bankruptcy Case. Better understanding what assets belong to the Boone Parties is important to: (i) determine if any assets that the Boone Parties claim ownership of might also be claimed as property of the Debtor's bankruptcy estate or if any assets might be commingled with the Debtor's assets; (ii) determine what financial transactions occurred between the Debtor and the Boone Parties (certain of the Boone Parties were on the Debtor's payroll and may have had various financial transactions with the Debtor – all of which need to be investigated and all bank records need to be produced as a result of); and (iii) determine how the Boone Parties have treated the Debtor for tax purposes (the Boone Parties' tax returns are necessary for this purpose). What's more, offers to sell the Debtor's assets are clearly relevant to the Debtor's liquidation and the payment of creditors. Finally, Superior Ag contends that even the collectability of any guaranty provided by the Boone Parties for the CoBank Claim is alone "good cause" for a Bankruptcy Rule 2004 subpoena. *See In re Transbrasil S.A. Linhas Aeras*, Case No. 11-19484-BKC-AJC, 2014 WL 1655990, at * 3 (Bankr. S.D. Fla. April 25, 2014) (denying motion to quash Bankruptcy Rule

23483513.v2

2004 subpoena to non-parties seeking to investigate accounts and related to guaranty of mortgage by certain of those non-parties).

19. The cases relied upon by the Boone Parties in the Motion are distinguishable. The decision in *Matter of Onatah Farms, LLC*, No. 21-10091, 2021 WL 2808813, at *1 (Bankr. N.D. Ind. Apr. 29, 2021), is distinguishable because the relevant motion in that case merely stated that a party "is in possession of, or has access to, documents related to farming operations, assets, liabilities, and financial condition of the Debtors" without elaborating further why the movant needed the information or what it planned to do with it. *Id.* In contrast, the information and documents requested in the Subpoenas directly relates to the Debtor's assets (whether they are also claimed by, or commingled with the Boone Parties'), possible causes of action the Debtor may have against the Boone Parties, the Debtor's tax status, the sale of the Debtor's assets, and Superior Ag's claim against the Boone Parties as co-guarantors of the CoBank Claim.

20. Further, in *In re J & R Trucking, Inc.*, 431 B.R. 818 (Bankr. N.D. Ind. 2010), the court quashed subpoenas to third parties that attempted to uncover fraudulent transfers. *Id.* at 822. Here though, Superior Ag's collateral, the tax basis of its investment, and the collectability of its guaranty claim against the Boone Parties are also at issue.

[*remainder of page intentionally left blank*]

WHEREFORE, Superior Ag respectfully requests that the Court enter an order (i) denying the Motion to Quash, and (ii) granting such further relief as the Court deems just and proper.

Dated: January 30, 2024

Respectfully submitted,

*/s/ James R. Irving*
James R. Irving
Gina M. Young
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 587-3606
Email: james.irving@dentons.com
gina.young@dentons.com

*Counsel for Superior Ag Resources Cooperative, Inc.*

## CERTIFICATE OF SERVICE

I, certify that on January 30, 2024, I filed this Objection using the Court's CM/ECF filing system, which will send notification of such filing to CM/ECF participants who have appeared in this case.

*/s/ James R. Irving*
James R. Irving

*Counsel for Central Kentucky Grain, LLC*

23483513.v2