UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CENTRAL KENTUCKY GRAIN, LLC ) | CASE NO. 23-32460 |
|     Debtor ) | Chapter 7 |
| _____ ) | |

**MOTION FOR AUTHORITY TO SELL BY ABSOLUTE
AUCTION THE REAL PROPERTY, FIXTURES, AND OTHER
IMPROVEMENTS LOCATED AT 101 BOURBON DRIVE, LEBANON,
KENTUCKY FREE OF ALL LIENS, INTERESTS OF LESSORS,
THE RIGHT OF FIRST REFUSAL OF MARION COUNTY INDUSTRIAL
FOUNDATION, INC., AND OTHER ENCUMBRANCES WITH LIENS
AND ENCUMBRANCES ATTACHING TO THE PROCEEDS AND FOR
OTHER RELIEF AS SET FORTH IN THIS MOTION**

Wm Stephen Reisz, trustee of the bankruptcy estate of Central Kentucky Grain, LLC ("Trustee"), respectfully moves this Court for authority to sell by absolute auction the real property, fixtures, and other improvements, both owned property and leased property, at 101 Bourbon Drive, Lebanon, Kentucky ("Owned & Leased Property") free of all liens, interests of lessors, and other encumbrances and to pay the proceeds to lessors and secured creditors (including real estate tax creditors) in the priority of their lease and secured claims as set out, and under the terms in this motion which include a carveout provided by the auctioneer and the second lienholder.  To support this motion, trustee states:

**Jurisdiction, Venue and Statutory Predicates**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and Rule 83.12 of Joint Local Rules of Civil Practice for the United States District Courts for the Eastern and Western Districts of Kentucky. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The primary statutory and rules predicates

for the relief sought are §§ 363(c) and (f) of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

### Preliminary Statement

Generally, by this and related motions (i.e. to employ auctioneer and to use cash collateral), Trustee seeks to sell at absolute auction and free of all encumbrances all of the assets of Central Kentucky Grain, LLC ("CKG"), both owned and leased, which have been appraised for $1,650,000. Except for a bank account and a 1.78 acre tract,[1] it appears to Trustee that all assets of the estate are over-encumbered.



With one small exception,[2] all of the stakeholders in this bankruptcy case

---

[1] At this time, it appears that there are no encumbrances on the 1.78 acre tract of land. Trustee is seeking approval of the bankruptcy court to obtain a title search on the real property.
[2] The Internal Revenue Service, which holds a priority claim for

2

agree to and support this motion. This includes all creditors (with that one small exception) who have filed claims (the bar date was March 11, 2024); the lessor of the equipment being sold; and all members of the of the debtor LLC. These stakeholders jointly agree that the method of liquidation set out in this motion will maximize the recovery of the stakeholders who are the beneficiaries of the estate.

The benefits to the bankruptcy estate from this proposed sale are several. First, there's the satisfaction of liquidating the assets in a manner agreed to all. Second, the proposed auctioneer, Tranzon Asset Advisors, and the second lien holder (Superior Ag) have agreed to carveouts. Third, Trustee believes that the unencumbered 1.78 acre tract will bring a higher price if it is offered as part of the sale of all assets.

As a practical matter (as described below), the consent of Farm Credit Leasing Services Corporation ("FCL") is required for the proposed sale to move forward. For it to approve the proposed sale, FCL requires that its lease payments be brought current before the auction sale. The amount to bring those payments current is $81,444.24 through May 2024 and $10,999.13 per month thereafter. Under the terms set out in this motion and in the tendered order, the FCL lease payments will be made to FCL from funds of the estate which are cash collateral of Superior Ag to the extent there are cash collateral funds. The remaining catchup payments will be made with other estate funds.[3]

## Background Facts

The debtor operated a grain storage and distribution facility at 101 Bourbon Drive, Lebanon, Kentucky. The real property at that location consists of two tracts:

---

$450.00, has not been a party to the negotiations leading up to the relief sought in the motion. Trustee has filed a motion to pay the IRS priority claim which, if granted, will make this motion agreed to by all stakeholders.

3 The estate has $172,326.58 in its bank account. A copy of Trustee's form 2 is attached as Exhibit 1.

1) a five acre tract ("Tract 1"), and 2) a contiguous 1.78 acre tract ("Tract 2"). Tract 1 has two buildings, six grain bins, elevators, weight scales and other assets located on it. Tract 2 does not contain improvements other than gravel for a driveway and parking. All of this property, real, personal, owned and/or leased, is what is described as the Owned & Leased Property. These assets are subject to various liens and leasehold interest described below. Prior to its bankruptcy, the debtor had the Owned & Leased Property appraised (as of April 1, 2023). Its appraised value is $1,650,000, substantially below the leasehold and lien interest encumbering the Owned & Leased Property.

The fixtures, improvements, and other property on the debtor's property were leased to CKG by Farm Credit Leasing Services Corporation ("FCL") by a lease which runs through December 2030. The FCL lease appears to be guaranteed by Superior Ag, Mark Anthony Boone, Lori Lea Boone, and Boone Farm's Trucking, LLC.[4]

In addition to its rights emanating from the lease agreement, the obligations owed FCL are secured by a mortgage on Tract 1 and a blanket UCC lien. FCL has agreed to this proposed sale and proposed employment of auctioneer provided:

i.  that it receives current and past due rent ($81,444.24 through May 31, 2024 plus monthly rental of $10,999.13 thereafter). Under the proposal set out in this motion and a related motion (motion to use cash collateral of Superior Ag), this rent catchup payment will be made by the estate with the cash collateral of Superior Ag to the extent it is available, then from unencumbered estate funds.

ii. the auction proceeds from the sale of its collateral up to the accelerated balance of the lease obligations (which is $1,212,338.94 as of October 18, 2023 plus attorney fees) less payments made under subparagraph (i) above.

---

4 The Summary of Lease Terms sheet provides these persons are Guarantors; however Trustee has not seen signed guarantees.

4

Generally, the accelerated balance consists of all monthly rent payments to the end of the lease term (December 2030), late fees, attorney fees, and CKG's purchase option price at the end of the lease term, $266,413.76.

Next in line regarding lien rights in the Owned & Leased Property is Superior Ag Resources Cooperative, Inc. ("Superior Ag"). Superior Ag owns 51% of the membership interest of the debtor.  After the bankruptcy was filed on October 18, 2023, Superior Ag acquired the debt obligation of CoBank, ABC ("CoBank"). As of the petition date, CoBank was owed $4,193,460.10, according to the debtor's schedules, and its claim is secured by a UCC lien covering "all assets of the debtor."[5] Superior Ag, because of its acquisition of the CoBank loan has a lien on the fixtures, improvements, and other property subordinate to the rights of FCL.

### Rights of First Refusal

Both Tract 1 and Tract 2 were purchased by CKG from Marion County Industrial Foundation, Inc ("MCIF"). Both deeds contain provisions which grant MCIF a right to match any written offer to CKG within 30 days of notification to MCIF of its intent to accept a written offer and for it (MCIF) to purchase the property.  This proposed sale will be free of any such right, and the proposed auction purchaser would purchase Tract 1 and Tract 2 free of this obligation.

### The Proposed Sale

The proposed sale of Owned and Leased Property will be an internet auction sale conducted by Tranzon Asset Advisors ("Tranzon")[6] according to Auction Proposal attached as Exhibit 1.  It will be an absolute auction.  It will be free and clear of all liens including without limitation the liens of FCL and Superior Ag, and

---

5 CoBank's UCC financing statement was filed with the Kentucky Secretary of State on November 4, 2019.

6 Tranzon Asset Advisors is a d/b/a of Durnil Realtors/Auctioneers, Inc.

interest of lessors, including without limitation any interest of <u>FCL</u>, and other encumbrances.

At the auction, the auctioneer may offer items in various parts or tracts then bundle them – to bring the highest bid price – as he sees fit. If <u>Trustee</u>, <u>FCL</u> and <u>Superior Ag</u> cannot agree on an apportionment of sale proceeds between Tract 2 and other assets, this Court will be the ultimate decider in allocating the sale proceeds.

The proposed auction is expected to take place about 5 weeks after court approval and closing of the auction sale within 35 to 40 days after the auction. At the closing:

i. Trustee will pay from the proceeds of <u>FCL</u> collateral any past due real estate taxes and accrued current taxes, pay closing cost, then pay <u>FCL</u> remaining proceeds from the sale of its collateral (up to its accelerated balance). Any remaining proceeds above <u>FLC's</u> accelerated balance will be paid to reimburse lease catchup payments, then to Superior Ag on its secured claim.

ii. From the proceeds of Tract 2, Trustee will pay past due real estate taxes and a proportionate share of the closing cost and retain the balance pending further order of this Court.

iii. The buyers premium will be paid to Tranzon and Tranzon will pay Trustee his share of the carveout.

**FCL and Its Lease**

The improvements on the real estate (six grain bins, elevators, weight scales and other assets) were leased by CKG from and are property of FCL. All or almost all of the FCL leased improvements are located on Tract 1. FCL will agree to this proposed sale only if its rent is brought current prior to the sale and it receives the proceeds of the sale of the leased property and other collateral (mostly the mortgage on Tract 1) up to its accelerated balance. As a practical matter, because the

6

bankruptcy estate does not own the leased property, a sale of the bankruptcy estate's property (the two real estate tracts) cannot be had without FCL's consent.  Trustee further believes that a sale of the Owned & Leased Property will generate a higher net recovery to the bankruptcy estate than a sale of only the two tracts because of the carveouts and because the sale could generated an amount in excess of the accelerated balance which would be due FCL.  While, he believes, the proposed sale does not pose a risk to the bankruptcy estate.

### The Payment to Farm Credit Leasing
### Using Cash Collateral of Superior Ag

As of April 17, 2024, Trustee has $172,326.58 in the estate's bank account.  These funds include $37,515.33 which he received in March 2024 from CoBank, ABC ("CoBank") which was a cash patronage payment.

CoBank is a co-op and part of the Farm Credit System.  It periodically distributes cash patronage payments to its borrowers based on CoBank profits and the size of the borrower's loan.  The cash patronage payment which the Trustee received in March was for 2023.  Additionally, Trustee expects receiving an equity distribution for 2023 from CoBank which will have a value of about $45,000.  The equity patronage distribution which Trustee expects to receive can be transferred and Trustee expected selling this asset for its value to Superior Ag

Superior Ag contends that the cash patronage payment (already received) and the equity patronage distribution (to be received) are its cash collateral under lien documents.  The CoBank UCC filing lists as collateral "All assets of the debtor."

The lease catchup payments will be made to FCL, as follows:

1. Trustee will pay FCL $37,515.33 using the proceeds of the FCL cash patronage payment which is the cash collateral of Superior Ag

2. Trustee will pay the remaining balance of the FCL catchup payments using

7

other cash funds of the estate.

### Reimbursements of the FCL Catchup Payments

From the auction sale proceeds, FCL will be paid first from the proceeds of Tract 1 and all leased property.

Once FCL's lease balance has been paid in full, the auction proceeds from Tract 1 and all leased property shall be paid to Superior Ag to reimburse it for the lease catchup payments it has made as provided above. To the extent Superior Ag is reimbursed for lease catchup payments made from its cash collateral, such payments shall be applied by Superior Ag to reduce any liability of the Boone Parties on their guarantee of the CoBank debt at a rate of $.49 for each dollar received by Superior Ag.

Once Superior Ag's lease catchup payments have been paid in full, the auction proceeds from Tract 1 and all leased property shall be paid to Trustee to reimburse it for the lease catchup payments it has made as provided above.

Once Trustee's lease catchup payments have been paid in full, the auction proceeds from Tract 1 and all leased property shall be paid to Superior Ag for its secured claim on that collateral.

The Trustee shall retain all proceeds from the sale of Tract 2 and repayment of lease catchup payments made from estate property other than Superior Ag's cash collateral.

### The Carveouts from Tranzon and Superior Ag.

Tranzon and Superior Ag have agreed to provide a carveout to the Trustee from their sale proceeds:

    i. Tranzon's terms of employment (proposed) provides that it will be paid a buyers premium of 10% of the sale price. Tranzon has agreed to a carveout of 3% of the sale price for Trustee (30% of the buyers

8

      premium). For example, if the winning bid for the auctioned property is $1,650,000.000 then Tranzon will be paid a buyers premium of $165,000.00. Tranzon will pay Trustee a carveout of its buyers premium of $49,500.

  ii.  Superior Ag will pay Trustee a carveout of 3% of the sale proceeds of its collateral after payment of the FCL accelerated balance claim. For example, if the proceeds of Tract 1 and improvements are $1,500,000 and after payment of taxes, closing cost and the accelerated balance of FCL, $200,000 is paid to Superior Ag for its secured claim, Superior Ag will pay a carveout of $6,000 to Trustee.

WHEREFORE, trustee moves this Court for authority to sell the owned and leased property upon the terms set out above, and to use the cash collateral of Superior Ag as set out above, and to pay the catchup rent to FCL as set out above.

                Respectfully submitted,

                /s/ Wm. Stephen Reisz
                Wm. Stephen Reisz, trustee
                401 W. Main St., Ste 1400
                Louisville, KY 40202
                (502)584-1000

Agreed To:

/s/ *James R. Irving*
James R. Irving
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
Counsel for Superior Ag Resources Cooperative, Inc.

Have Seen
/s/ *Dean A. Langdon*
Dean A. Langdon
Heather M. Thacker
DELCOTTO LAW GROUP PLLC
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Counsel for:
Lori Boone
Mark Boone
Boone Farms Trucking, Inc.
Daniel Hamilton

Farm Credit Leasing Services Corporation

By: _____
Its _____

10

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was on May 10, 2024 sent electronically through the US Bankruptcy Court's ECF system at the electronic addresses set forth in the ECF system to all parties receiving electronic notifications in this case; and emailed to:

BHLeep@MarionCountyKy.com

and mailed to:

Brooklyn Leep
Executive Director
Marion County Industrial Foundation
223 North Spalding Avenue
Suite 300
Lebanon, KY 40033

        /s/ Wm. Stephen Reisz
        Wm. Stephen Reisz